**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| Plaintiff, | **MEMORANDUM DECISION** |
| | **& ORDER** |
| v. | |
| **MACKENZIE GLADE HUNTER,** | **Case No. 2:07CR307DAK** |
| Defendant. | |

This matter is before the court on:  (1) Sue and Ken Antrobus's Motion to Have Vanessa Quinn Recognized as a Crime Victim, to Be Recognized As Her Representative, to Make an In-Court Victim Impact Statement, and to Receive Restitution; and (2) Sue and Ken Antrobus's Motion for Disclosure of Parts of the Presentence Report Relevant to Sentencing.  The Antrobuses did not request oral argument on their motions, and the court concludes that oral argument would not significantly aid in its determination of the motions.  *See* DUCrimR 12-1(b)(3).  After carefully considering the law and facts relevant to the Antrobuses' motions, the court enters the following Memorandum Decision and Order.

## BACKGROUND

On February 12, 2007, the Antrobuses' 28-year old daughter, Vanessa Quinn, was tragically killed by Sulejman Talovic at the Trolley Square Shopping Center in one of Salt Lake's

1

most devastating recent criminal incidents.  Talovic used a .38 Smith & Wesson handgun and a

12-gauge shotgun to kill five and seriously injure four innocent shoppers at the mall.  Quinn was

shot with the .38 Smith & Wesson handgun.  Talovic bought the .38 Smith & Wesson handgun

from Defendant Hunter in June or July of 2006.  Hunter is charged in this action with unlawfully

selling the firearm to Talovic because he reasonably believed him to be a minor.

Hunter pled guilty to Count I of the Indictment and Count I of the Superseding

Misdemeanor Information.  Count I of the Indictment charges Hunter with being an unlawful

user or addict of controlled substances in possession of a firearm in violation of 18 U.S.C. §

922(g)(3).  Count I of the Superseding Misdemeanor Information charges that Hunter unlawfully

sold, delivered, or otherwise transferred a handgun to a person he knew or had reasonable cause

to believe was a juvenile in violation of 18 U.S.C. §§ 922(x)(1) and 924(a)(6)(B)(i).  Count I of

the Indictment has no relevance to the present motion.

Hunter's Statement by Defendant in Advance of Plea of Guilty admits to the following

facts in relation to Count I of the Superseding Misdemeanor Information:

> I did unlawfully sell, deliver, or otherwise transfer a handgun (a
> Smith & Wesson .38 Special, Model 36 pistol) to a person I had
> reasonable cause to believe was a juvenile; all in violation of Title
> 18, United States Code, Section 922(x)(1).  The firearm referenced
> here and in the Indictment was manufactured outside the State of
> Utah, and I acknowledge that its presence in Utah indicates that it
> affected interstate commerce.

At Hunter's Change of Plea Hearing, the court set Hunter's sentencing for January 14,

2008.  The Antrobuses then filed the present motions on December 13, 2007, and December 20,

2007.

2

# DISCUSSION

## Motion to Determine Crime Victim Status

The Antrobuses' motion seeks declarations that Vanessa Quinn is a victim of Hunter's offense and that they can assert her rights on her behalf pursuant to the Crime Victims Rights Act ("CVRA"), 18 U.S.C. § 3771.[1]  As Vanessa Quinn's parents, the Antrobuses undoubtedly qualify

---

[1]  Section 3771(d)(3) of the CVRA requires the court to "take up and decide any motion asserting a victim's right forthwith."  The Antrobuses contend that the term "forthwith" should be interpreted to mean immediately, but they then waive their right to have their motion decided immediately in order to allow the court time to review the pleadings.  The Antrobuses then unilaterally determine for the court and parties that a reasonable time for consideration of the motion is up to and including January 3, 2008.  Part of the reasoning behind this deadline is the Antrobuses' desire to have enough time to file an appeal of this court's ruling before Hunter's sentencing on January 14, 2008.

While the term "forthwith" may be interpreted to mean immediately in certain contexts, this court cannot conclude that the CVRA requires rulings on victim's rights issues before the other parties in the case can respond to the motion.  Even though the CVRA specifically states that a person accused of the crime cannot obtain any form of relief under the act, the court cannot interpret the CVRA–which was enacted to allow victims to be participants in the process–as foreclosing a defendant's ability to be a participant in the process.  Under DUCrimR 12-1(b)(1)(C), a memorandum opposing a motion must be filed fifteen days after service of the motion.  A ruling before such time as the defendant is provided to respond would be akin to ex parte or emergency injunctive relief.  There is no indication that the CVRA intended to provide victims with the ability to have issues decided on an ex parte basis.

Moreover, the Antrobuses' concern over the amount of time before sentencing is a situation that they imposed on themselves.  This action has been pending since May 2007 and Hunter pled guilty on November 1, 2007.  Hunter's January 14, 2008 sentencing date was set at the Change of Plea Hearing held on November 1, 2007.  Therefore, if they were concerned about the timing of a ruling and an appeal prior to sentencing, the Antrobuses had sufficient time to file the motion prior to December 13, 2007, at a time that would have allowed the parties and court time to analyze the issues more fully.  The fact that they chose to wait should not influence this court's interpretation of the statute's use of the term "forthwith."

The deadline imposed by the Antrobuses is also not required by the statute.  The court finds no reason to give the CVRA an interpretation at odds with allowing all parties an equal voice in the process and the court adequate time to review their position.  The standard practice in this district for obtaining an expedited ruling is to bring a motion for expedited consideration outlining the basis for the expedited review and requesting specific deadlines for the briefing of the issue prior to the court's ruling.  Because these conventions were not followed, the court is left in the position of issuing a ruling without input from any of the other parties to the action.

to be representatives for their deceased daughter under the provision of the CVRA that allows "family members" to assume the crime victim's rights when the victim is not able to assert her own rights.[2]  *Id.* § 3771(e).  Therefore, the principal issue raised by the Antrobuses' motion is whether Quinn is a victim of Hunter's crime under the CVRA.

## A.  CVRA

Unlike other victims' rights acts, the CVRA was passed as a means of making "victims independent participants in the criminal justice process" with standing to assert certain procedural and substantive rights.  *Kenna v. United States District Court for the Central Dist. of California*, 435 F.3d 1011, 1013 (9th Cir. 2006); *United States v. Sharp*, 463 F. Supp. 2d 556, 560 (E.D. Va. 2006).  The CVRA guarantees crime victims eight different rights: (1) the right to be reasonably protected from the accused; (2) the right to notice of any public proceedings; (3) the right to be present during public court hearings; (4) the right to be reasonably heard at court proceedings; (5) the reasonable right to confer with the government's attorney; (6) the right to restitution; (7) the right to proceedings without unreasonable delay; and (8) the right to be treated with fairness and with respect for the victim's dignity and privacy.  18 U.S.C. § 3771(a).  In this case, the Antrobuses assert that they have the right to make a victim impact statement at Hunter's

Despite the court's contrary views with respect to the interpretation of "forthwith," the court enters this order in accord with the January 3, 2008 deadline because the fifteen-day time period for Hunter and/or the government to respond to the motion expired on December 31, 2007.

[2]  The court notes that the letter to the court from Sue and Ken Antrobus mentions that Quinn was married at the time of her death.  Quinn's husband has not joined in the Antrobuses' motion.  The court is unaware of any cases interpreting the term "family members" under the CVRA.  While it is clear that the Antrobuses, as Vanessa Quinn's parents, are family members, the court's decision does not purport to address the situation where there could be competing or conflicting interests among family members or between family members and a representative of the deceased victim's estate.

sentencing and should be awarded $107,000 in restitution to cover funeral expenses and lost income.

In the CVRA, the term "crime victim" is defined as "a person directly and proximately harmed as a result of the commission of a Federal offense." *Id.* at 3771(e).  Thus, a person must be directly harmed as a result of the offense and the harm must be proximate to the crime. During the floor debate of the CVRA, one of the bills primary sponsors noted that the definition of "victim" in the CVRA is an "intentionally broad definition because all victims of crime deserve to have their rights protected, whether or not they are the victim of the count charged." 150 Cong. Rec. S10910, 10912 (daily ed. Oct. 9, 2004) (statement of Sen. Kyl).  But despite this legislative history, at least one court has noted that the full Congress passed the CVRA knowing that the Supreme Court has interpreted similar language in prior victims' rights acts not to refer to uncharged conduct.  *See United States v. Turner*, 367 F. Supp. 2d 319, 326 (E.D.N.Y. 2005) (recognizing that the House report on the CVRA noted that 18 U.S.C. § 3771(a)(6) "makes no change in the law with respect to victims' ability to get restitution.").

In any event, the court must apply the language of the act itself.  Under the CVRA, a victim must be both "directly and proximately" harmed by the offense.  The term "proximate" means "lying very near or close" with the additional senses "(1) 'soon forthcoming; imminent'; (2) 'next preceding' <proximate cause>; and (3) 'nearly accurate; approximate." Bryan A. Garner, *Modern Legal Usage*, at 711 (2d ed. 1995).  "Proximate cause," of course, is a term of art in the law that while "elusive" emphasizes "the continuity of the sequence that produces an event" and refers to "a cause of which the law will take notice." *Id.*  While one commentator "terms proximate cause 'concise gibberish,'" *id., Black's Law Dictionary* fairly aptly defines it as

"[t]hat which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces injury, and without which the result would not have happened."  Black's Law Dictionary, at 1225 (6th ed. 1990).

The only other court to examine the extent to which a person may qualify as a victim under the CVRA, looked not only to the language of the CVRA but to cases applying the VWPA and the Mandatory Victims Restitution Act ("MVRA") because all three statutes use the language "directly and proximately harmed."  *Sharp*, 463 F. Supp. 2d at 561-64.  The definitions in these statutes are nearly identical.  *See also* Paul G. Cassell, *Recognizing Victims in the Federal Rules of Criminal Procedure:  Proposed Amendments in Light of the Crime Victims' Rights Act*, 2005 BYU L. Rev. 835, 857 (noting that the CVRA's definition of "victim" comes from the earlier MVRA).

In *Hughey v. United States*, 495 U.S. 411 (1990), the Supreme Court addressed the authorization of restitution under the Victim and Witness Protection Act ("VWPA").  The VWPA defines a victim as "a person directly and proximately harmed as the result of the commission of an offense for which restitution may be ordered."  18 U.S.C. § 3663(a)(2).  The Court found that restitution was only authorized for loss caused by the specific conduct which forms the basis for a defendant's offense of conviction.  495 U.S. at 413.  Because the district court included restitution for the damage caused by the defendant's behavior surrounding all six original counts, rather than the much smaller amount of damage from the single count to which he pled guilty, the Court found that the district court exceeded its authority in granting restitution for loss not caused by the specific conduct that was the basis of the loss.  *Id.* at 422.

As with the VWPA, the MVRA allows restitution only for those who are "directly and

proximately harmed as a result of the commission of an offense for which restitution may be ordered." 18 U.S.C. § 3663A(a)(2).  In *United States v. Davenport*, 445 F.3d 366, 374 (4th Cir. 2006), the court stated that "[a] person is directly harmed, for purposes of the MVRA, when the harm results 'from conduct underlying an element of the offense of conviction.'"  In *Davenport*, the defendant stole a woman's wallet and used her credit cards.  The defendant pled guilty to using stolen credit cards.  *Id*. at 367.  The court found that only the credit card companies who were liable for the fraudulent charges were directly harmed by the defendant's offense conduct. *Id.* at 374.  The court, therefore, reversed the district court's award of restitution to the woman whose wallet was stolen.  *Id.*

Courts applying the VWPA and MVRA have also grappled with the issue of proximate cause.  In *United States v. Vaknin*, 112 F.3d 579 (1st Cir. 1997), the First Circuit recognized precedent dealing with the standard of causation between the defendant's criminal conduct and the victim's losses required for awarding restitution under the VWPA crossed the spectrum*. Id*. at 587-88.  The court determined that the VWPA required the government to show "not only that a particular loss would not have occurred but for the conduct underlying the offense of conviction, but also that the causal nexus between the conduct and the loss is not to attenuated (either factually or temporally*).*"  *Id*. at 590.  The court explained that "[t]he watchword is reasonableness.  A sentencing court should undertake an individualized inquiry; what constitutes sufficient causation can only be determined case by case, in a fact-specific probe*."  Id.*

The First Circuit's approach in relation to a determination of causation under the VWPA is similar to the *Sharp* court's analysis in relation to the definition of victim under the CWPA. The *Sharp* court concluded that the determined of "victim" under the CVRA is a "fact-specific

question" because "foreseeability is at the heart of proximate harm; the closer the relationship between the actions of the defendant and the harm sustained, the more likely that proximate harm exists*." Id.*

In applying the recognized standards for proximate harm, this court concludes that Vanessa Quinn was not directly and proximately harmed by Hunter's sale of a firearm to a minor. Quinn and the Antrobuses are undoubtedly victims of Sulejman Talovic's crimes.  But the nexus between Hunter's act of selling a firearm to a minor and Talovic's deadly rampage through a shopping mall eight months later is too factually and temporally attenuated.  The Antrobuses argue that Hunter stated to federal officials that he thought Talovic might use the gun to rob a bank and that such a crime would be a violent crime.  This statement, however, is not included in Hunter's Statement by Defendant in Advance of Guilty Plea.  Nor do they demonstrate that the statement is anything other than general speculation.  Even if Hunter believed that Talovic may commit a crime with the handgun, the nature of that crime was unforeseeable.

The Antrobuses rely on several cases in which the court determined direct and proximate harm existed.  But in each of those cases, the harm was a result of the defendants' own actions, not the actions of an intervening actor.  Because a determination of proximate harm is necessarily a fact-specific inquiry, the court finds these cases factually distinguishable from the present case. In *United States v. Donaby*, 349 F.3d 1046 (7th Cir. 2003), the court determined that a police department could be considered a victim under the MVRA because damage to a police department's car in a high-speed chase was directly and proximately caused by the defendant's bank robbery.  *Id.* at 1053.  The court recognized that the high-speed chase was a direct and foreseeable consequence of the robbery.  *Id*. at 1055.  In *Donaby*, there is no intervening actor, no

temporal separation, and the defendant could foresee the damage as a result of the chase.

Moreover, in contrast to this case, the defendant in *Donaby* made the decision to engage in the high-speed chase in an attempt to successfully conclude his robbery. He also could have surrendered to police before the damage occurred. In this case, even at the time the gun was sold, Hunter had no knowledge as to Talovic's intentions. And, after the gun was sold, Hunter had no contact with Talovic.

The Antrobuses also rely on *United States v. Checora*, 175 F.3d 782 (10th Cir. 1999), in which the Tenth Circuit determined that a murder victim's children were victims of the murder under the MVRA because his death eliminated the child support payments they received. *Id.* at 795. The court concluded that the children were directly and proximately harmed as a result of their father's death because they lost, among other things, a source of financial support. *Id.* The defendant in *Checora,* however, committed the murder. There was no intervening actor. If the defendant in the present case was Sulejman Talovic, there is no question that Vanessa Quinn would be victims under the CVRA.[3]   Because this case is against Hunter, not Talovic, the court finds *Checora* factually inapplicable.

The only case to both analyze the definition of "victim" under the CVRA and involve the conduct of an intervening actor is *Sharp.*  In *Sharp*, a woman sought to make a victim impact statement at the sentencing of a drug dealer who sold drugs to her former boyfriend. 463 F. Supp. at 557. The woman asserted that when her boyfriend consumed the drugs he purchased

---

[3]  There would also be a stronger argument that the Antrobuses themselves would be victims in a case involving Talovic as the defendant. However, *Checora* would remain factually distinguishable with respect to the Antrobuses' request for Quinn's lost income. While the children in *Checora* were recipients of their father's financial support, there is no indication in the record in this case that the Antrobuses relied on the income of their adult daughter.

9

from the drug dealer, he abused her.  *Id.* at 558-59.  The court concluded that there was not

sufficient evidence to demonstrate that the defendant's wrongful act of distributing marijuana

directly and proximately harmed the girlfriend.  *Id.* at 567.  The court stated that the girlfriend

"must show more than a mere *possibility* that an alleged act (the Defendant's federal crime)

caused her boyfriend to physically and emotionally abuse her."  *Id.*  The court noted that

"[i]ndividuals, whether 'high' on drugs or drug-fee, are responsible for their actions.  The act of

consuming marijuana by [the former] boyfriend, not the furnishing of it to him by the Defendant,

was, at most, the proximate cause of [the girlfriend's] sustained injuries."  *Id.*  The court,

therefore, concluded that the "former boyfriend's alleged behavior was an independent,

intervening cause which broke the chain of necessary causation."  *Id.* at 568.

       This court agrees with the analysis of *Sharp*.  The actions of Talovic were an

independent, intervening cause which broke the necessary chain of causation.  While the court

does not want to minimize in any way the harm suffered by those who were killed, injured, or

had loved ones killed or injured by Talovic, that harm is not sufficiently connected to Hunter's

offense of unlawfully selling a firearm to a minor for this court to consider Hunter's actions to be

the direct and proximate cause of the harm.  The fact-specific inquiry necessary in this

determination does not support a finding that Hunter could foresee Talovic's actions.  There are

cases that find an adequate connection in instances when a defendant hands a gun to a friend

during a fight.  But this is not such a case.  The sale of the handgun was not in the heat of the

moment.  Hunter sold the gun to Talovic eight months before the shooting and there is no

indication that he spoke to Talovic about his intentions.  At most, Hunter surmised that Talovic

might use it to rob a bank.  This type of speculation does not demonstrate the type of knowledge

or foreseeability necessary to finding Hunter's sale of the firearm to a minor to be the proximate cause of Quinn's death.

Because the court concludes that Vanessa Quinn is not a victim of Hunter's crime, it necessarily follows that the court concludes that her parents are not victims of Hunter's crime in their own right.  The Antrobuses cite to *United States v. Bedonie*, for the proposition that they are also victims because they were directly and proximately harmed by Quinn's murder.  317 F. Supp. 2d 1285, 1301-02 (D. Utah 2004), *rev'd on other grounds sub nom. United States v. Serawop*, 410 F.3d 656 (10th Cir. 2005).  Although the Antrobuses state that the court need not reach this more complicated issue because they would have the same rights as Quinn's representative, the court does not conclude that *Bedonie* supports a finding that the Antrobuses are victims in their own right.  *Bedonie* involved restitution against a defendant convicted of involuntary manslaughter because her intoxication while driving caused the death of a passenger in her vehicle.  *Bedonie* would only be analogous to Hunter's case if it dealt with the person who sold Bedonie the alcohol.

The selling of a firearm to a minor is actually similar to cases involving the unlawful sale of alcohol to a minor.  In *Corrigan v. United States*, 815 F.2d 954, 956-57 (4th Cir. 1987), the court found that the United States was not liable under the Federal Tort Claims Act for providing,, through Army taverns, alcohol to an underage Army private who them struck a third party because providing alcohol was not a proximate cause of the injury.  Likewise, a convenience store clerk who sells alcohol to a minor would not be the proximate cause of injuries sustained in an automobile accident if the minor decides to get drunk and drive.

While Quinn and the Antrobuses are clearly victims of a tragic crime, the court concludes

11

that neither are victims, as that term is defined in the CVRA, of Hunter's offense of selling a

firearm to a minor.  The court concludes that the Antrobuses cannot demonstrate that Hunter's

sale of a firearm to a minor "directly and proximately" caused Quinn's death.

## B.  Court's Discretionary Powers

Even though the court has determined that the Antrobuses do not have a right to speak at

Hunter's sentencing under the CVRA, the Antrobuses also assert that they should be entitled to

make a victim impact statement at Hunter's sentencing based on the court's broad discretionary

powers.  Under 18 U.S.C. § 3661, "no limitation shall be placed on the information concerning

the background, character, and conduct of a person convicted of an offense which a court of the

United States may receive and consider for the purpose of imposing an appropriate sentence."  A

court can allow an individual to speak at a sentencing without regard to whether that individual

meets the CVRA's definition of victim.  *See United States v. Degenhardt*, 405 F. Supp. 2d 1341,

1343 (D. Utah 2005).

In *United States v. Leach*, 2006 WL 3203746 (6th Cir. Nov. 6, 2006), the court allowed a

defendant's estranged wife to be heard at sentencing regarding the defendant's abusive and

threatening behavior even though the offense was a felon in possession of a firearm.  *Id.* at *1.

The court recognized that the CVRA "did not alter (or, more importantly, limit) a district court's

traditionally broad discretion to consider 'a wide variety of factors' at sentencing."  *Id.* at *2.

Section 3661 refers to information relating to the background, character, and conduct of a

person.  Unlike the estranged wife in *Leach,* the Antrobuses have no information regarding

Hunter's background, character, or conduct.  The Supreme Court has recognized that "a judge

may appropriately conduct an inquiry [at sentencing] broad in scope, largely unlimited either as

to the kind of information he may consider, or the source from which it may come." *Untied States v. Tucker*, 404 U.S. 443, 446 (1972).  While the court's discretion is "largely unlimited," this court has already reviewed the Antrobuses' written submissions.  The arguments of counsel and the statement prepared by the Antrobuses give the court an adequate understanding of their positions with respect to sentencing.  To the extent that the Antrobuses wish for Hunter to be aware of the contents of their statement, the statement is attached as Exhibit 1 to the Antrobuses' memorandum in support of their motion.  Hunter, therefore, has already been served with a copy of the statement.  The court, therefore, does not find a need for it to exercise its discretion to allow the Antrobuses to speak at Hunter's sentencing.

Because the court concludes that Quinn is not a "crime victim" of Hunter's offense under the CVRA and there is no basis for exercising its discretion to allow allocution at sentencing, the court denies the Antrobuses' Motion to Have Vanessa Quinn Recognized as a Crime Victim, to be Recognized as Her Representative, to Make an In-Court Victim Impact Statement, and to Receive Restitution.

### Motion for Disclosure of Presentence Report

The Antrobuses have also filed a Motion for Disclosure of Parts of the Presentence Report Relevant to Sentencing and Urging a Sentence that Punishes the Defendant for the Death of Vanessa Quinn.  Because the court has determined that Vanessa Quinn is not a victim under the CVRA, the court determines that the Antrobuses are not entitled to disclosure of the parts of Hunter's Presentence Report

### CONCLUSION

Based on the above reasoning, the court denies the Antrobuses' Motion to Have Vanessa

Quinn Recognized as a Crime Victim, to be Recognized as Her Representative, to Make an In-Court Victim Impact Statement, and to Receive Restitution.  Accordingly, the court also denies the Antrobuses' Motion for Disclosure of Parts of the Presentence Report Relevant to Sentencing.

DATED this 3rd day of January, 2008.

_____
DALE A. KIMBALL
United States District Judge

14